# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

JOSE S. VASQUEZ,

        Plaintiff,

   v.

MICHAEL ASTRUE,
Commissioner of Social Security,

        Defendant.
_____/

CASE NO. 1:09-cv-01894-SMS

ORDER AFFIRMING AGENCY'S DENIAL OF BENEFITS

Plaintiff Jose S. Vasquez seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income ("SSI"), pursuant to Title XVI of the Social Security Act (42 U.S.C. § 301 *et seq.*) (the "Act"). The matter is currently before the Court on the parties' cross-briefs, which were submitted, without oral argument, to the Honorable Sandra M. Snyder, United States Magistrate Judge.[1] Following a review of the complete record, this Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based on proper legal standards. Accordingly, this Court denies Plaintiff's appeal.

## I.   Administrative Record

### A.   Procedural History

On January 8, 2007, Plaintiff applied for SSI disability benefits, alleging disability beginning June 18, 2002. His claim was initially denied on May 16, 2007, and upon

---

[1] Both parties consented to the jurisdiction of a United States Magistrate Judge (Docs. 10 & 11).

reconsideration, on August 29, 2007. On October 24, 2007, Plaintiff filed a timely request for a hearing. Plaintiff appeared and testified at a hearing on January 13, 2009. On May 13, 2009, Administrative Law Judge Sharon L. Madsen ("ALJ") denied Plaintiff's application. The Appeals Council denied review on September 11, 2009. On October 27, 2009, Plaintiff filed a complaint seeking this Court's review (Doc. 1).

**B.     Factual Record**

Plaintiff (born August 26, 1955) graduated from high school and completed four years of college, but did not earn a degree. He had training as a carpenter and as a nurse's aid. Plaintiff worked as a raisin farmer until June 18, 2002, when he sustained back, neck, and shoulder injuries in a car accident. Although Plaintiff alleged that his disability began on the date of the accident, the record does not include any medical records of original or follow-up treatment of those injuries. Since the accident, Plaintiff has taken Vicodin[2] to relieve pain in his right leg. Plaintiff testified that physical therapy did not help him.

By March 2009, when Plaintiff testified at the hearing in this case, Plaintiff was homeless and living in his car. His wife and children were living with his wife's aunt.

In December 2006, Plaintiff developed a shoulder abscess attributed to drug-resistant streptococcus (MRSA). John Kettelle, M.D., performed emergency surgery, lancing the abscess and debriding the wound. By January 26, 2007, the wound had healed, and Plaintiff was reportedly "doing well," except for shoulder tightness. Subsequent treatment and testing revealed minor joint space narrowing and a limited range of motion. Physical therapy with home exercise follow-up improved his shoulder movement.

At about the same time, Plaintiff was diagnosed with diabetes mellitus. He experiences right foot neuropathy. Because of financial issues and his homelessness, Plaintiff's diabetes is uncontrolled. He takes oral medication (Glyburide and Metformin), but lacking refrigeration, does not administer insulin. The diabetes frequently complicated healing of Plaintiff's wounds.

///

---

[2] Vicodin (acetaminophen and hydrocodone) is a narcotic pain reliever used to relieve moderate to severe pain. www.drugs.com/vicodin.html (April 4, 2011).

2

In August 2008, Plaintiff, who has a history of kidney stones, developed a kidney infection when a stone blocked his urethra. Doctors surgically placed a nephrostomy tube to permit urine to drain from his right kidney until the urethral blockage was resolved. In late September, doctors performed surgery in which they removed the stone, placed a stent, and removed the nephrostomy tube. Although the stent was to have been removed later, Plaintiff still had the stent when he testified in January 2009.

**Vocational expert testimony.** Vocational expert Judith Najarian[3] testified that Plaintiff could not return to his prior work as a fruit crop farmer (heavy and skilled, SVP 7). Plaintiff skills were transferable in the farming industry.

For the first hypothetical question, the ALJ directed Najarian to assume a hypothetical person of the same age, education and work background as Plaintiff, able to lift and carry fifty pounds occasionally and twenty-five pounds frequently; able to sit, stand, and walk six hours per day; able to occasionally squat or kneel; unable to lift above shoulder level with the right arm. Najarian opined that, although the hypothetical person could not perform Plaintiff's former work as a raisin farmer, he could work as an industrial sweeper-cleaner operator (No. 389.683-010, medium, SVP 2), with approximately 58,434 positions in California; production worker/solderer (No. 813.684-022, light, SVP 2) with 5164 positions available in California; or production line assembler (No. 706.687-010, light, SVP 2) with 30,409 positions in California. For each job, Najarian omitted those subcategories that would require the individual to lift over shoulder level with his or her right arm.

For the second hypothetical question, the ALJ directed Najarian to assume the same restrictions as those of hypothetical question one, except that lifting and carrying was limited to twenty pounds occasionally and ten pounds frequently. Najarian opined that such a person could still perform the position of production worker/solderer and production line assembler, identified in response to hypothetical question one. In addition, such a person could perform the work of an

///

---

[3] The hearing transcript identifies Nazarian as "Mrs. Magerian."

3

information clerk (No. 237.367-018, light SVP 2).  Approximately 9573 such positions are available in California.

Plaintiff's attorney then directed Najarian to assume the same restrictions as those of the first hypothetical question plus that the individual needed to rest from thirty minutes to one hour twice a day.  Najarian responded that such a person was not employable.

For her second hypothetical question, Plaintiff's attorney directed Najarian again to assume the same facts as in the ALJ's first hypothetical question, plus limitation of use of the right hand for 45 minutes at a time, followed by rest and the application of cold water for approximately fifteen minutes.  Najarian opined that such a person would not be employable.

For her third hypothetical question, Plaintiff's attorney directed Najarian to assume the same facts as in the ALJ's first hypothetical question, plus that the individual suffered dizzy spells requiring him or her to sit down for fifteen to thirty minutes two or three times daily.  Again, Najarian opined that the individual was unemployable.

**II. Discussion**

   **A.   Scope of Review**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, a court must determine whether substantial evidence supports the Commissioner's decision.  42 U.S.C. § 405(g).  Substantial evidence means "more than a mere scintilla" (*Richardson v. Perales*, 402 U.S. 389, 402 (1971)), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's decision.  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards.  *See, e.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the ALJ's determination that the claimant is not disabled if the ALJ applied the proper

///

legal standards, and if the ALJ's findings are supported by substantial evidence. *See Sanchez v. Secretary of Health and Human Services*, 812 F.2d 509, 510 (9th Cir. 1987).

**B.     Legal Standards**

To qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity because of a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must demonstrate a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering age, education, and work experience, engage in any other substantial gainful work existing in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

To encourage uniformity in decision making, the Commissioner has promulgated regulations prescribing a five-step sequential process for evaluating an alleged disability. 20 C.F.R. §§ 404.1520 (a)-(f); 416.920 (a)-(f). The process requires consideration of the following questions:

| | |
|---|---|
| Step one: | Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two. |
| Step two: | Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate. |
| Step three: | Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four. |
| Step four: | Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five. |
| Step five: | Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled. |

*Lester v. Chater*, 81 F.3d 821, 828 n. 5 (9th Cir. 1995).

The ALJ found that Plaintiff had not engaged in substantial gainful activity since he applied for disability benefits on January 8, 2007. His severe impairments included status post right shoulder abscess and degenerative joint disease; diabetes mellitus with neuropathy; and

status post kidney stones with placement and removal of nephrostomy tube and stent placement.. The ALJ concluded, however, that none of Plaintiff's impairments met or equaled an impairment listed in 20 C.F.R. Part 404, Subpart P. Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926). Although Plaintiff was unable to perform his past work as a raisin farmer, the ALJ found that Plaintiff had residual functional capacity to lift and carry twenty pounds occasionally and ten pounds frequently, and to stand, walk, and sit six hours in an eight-hour work day with no lifting at or above shoulder level on the right.

### C. Plaintiff's Lack of Credibility

Plaintiff contends that the ALJ erred in assessing his subjective testimony, particularly in that the ALJ characterized Plaintiff as "disability seeking" and addicted to Vicodin. The Commissioner responds that the ALJ's findings were appropriately articulated and supported by the record. Following its review of Plaintiff's testimony, in light of applicable legal principles, this Court concludes that the ALJ appropriately discounted Plaintiff's credibility.

After noting that Plaintiff's testimony of the intensity, persistence and limiting effects of his symptoms were inconsistent with his medically determinable impairments, the ALJ wrote:

> Weighing all the relevant factors, I find the claimant's impairments are not as limiting as he alleges. The record indicates that the claimant appears to be seeking disability. The record also indicates that the claimant is addicted to Vicodin; when prescribed ibuprofen for pain the claimant reported it did not work and wanted Vicodin prescribed again. I note none of Plaintiff's examining or treating physicians characterized the claimant as being totally disabled or incapacitated by reason of any impairment.

AR 13.

An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional requirement. *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007), *quoting Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). But if he or she decides to reject a claimant's testimony after a medical impairment has been established, the ALJ must make specific findings assessing the credibility of the claimant's subjective complaints. *Ceguerra v. Secretary of Health and Human Services*, 933 F.2d 735, 738 (9th Cir. 1991). "[T]he ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834, *quoting Varney v. Secretary of Health and Human Services*, 846 F.2d 581, 584 (9th Cir. 1988).

He or she must set forth specific reasons for rejecting the claim, explaining why the testimony is unpersuasive. *Orn*, 495 F.3d at 635. *See also Robbins v. Social Security Administration*, 466 F.3d 880, 885 (9th Cir. 2006). The credibility findings must be "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

When weighing a claimant's credibility, the ALJ may consider the claimant's reputation for truthfulness, inconsistencies in claimant's testimony or between his or her testimony and conduct, claimant's daily activities, claimant's work record, and testimony from physicians and third parties about the nature, severity and effect of claimant's claimed symptoms. *Light v. Social Security Administration*, 119 F.3d 789, 792 (9th Cir. 1997). The ALJ may consider "(1) ordinary techniques of credibility evaluation, such as claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008), *citing Smolen v. Chater*, 80 F.3d 1273 (9th Cir. 1996). If the ALJ's finding is supported by substantial evidence, the Court may not second-guess his or her decision. *Thomas*, 278 F.3d at 959.

The Ninth Circuit has summarized the applicable standard:

> [T]o discredit a claimant's testimony when a medical impairment has been established, the ALJ must provide "'specific cogent reasons for the disbelief.'" *Morgan*, 169 F.3d [595,] 599 [9th Cir. 1999] (quoting *Lester*, 81 F.3d at 834). The ALJ must "cit[e] the reasons why the [claimant's] testimony is unpersuasive." *Id.* Where, as here, the ALJ did not find "affirmative evidence" that the claimant was a malingerer, those "reasons for rejecting the claimant's testimony must be clear and convincing." *Id.* Social Security Administration rulings specify the proper bases for rejection of a claimant's testimony . . . An ALJ's decision to reject a claimant's testimony cannot be supported by reasons that do not comport with the agency's rules. *See* 67 Fed.Reg. at 57860 ("Although Social Security Rulings do not have the same force and effect as the statute or regulations, they are binding on all components of the Social Security Administration, . . . and are to be relied upon as precedent in adjudicating cases."); *see Daniels v. Apfel*, 154 F.3d 1129, 1131 (10th Cir. 1998) (concluding the ALJ's decision at step three of the disability determination was contrary to agency rulings and therefore warranted remand). Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and "unexplained, or inadequately explained, failure to

seek treatment or follow a prescribed course of treatment." *Fair*, 885 F.2d at 603; *see also Thomas*, 278 F.3d at 958-59.

*Orn*, 495 F.3d at 635.

An ALJ may not disregard a claimant's testimony solely because objective medical evidence does not fully substantiate it. *Robbins*, 466 F.3d at 883. Unless the ALJ finds that affirmative evidence demonstrates that the claimant is a malingerer, he or she can only find the claimant's testimony not credible by making specific findings of credibility and supporting each such finding with clear and convincing evidence. *Id.*

The ALJ did so in this case, referring specifically to Plaintiff's medical records, which provided abundant documentation of Plaintiff's continued preference for Vicodin to the exclusion of other pain relievers. On June 14, 2006, Plaintiff was first seen at Adventist Health, complaining of right side pain "all the way down to his toes." AR 262. Plaintiff had previously been treated after experiencing an abscess in his hip following injuries in a motor vehicle accident. AR 262. The Lidocaine patch did not relieve his pain. AR 262. Plaintiff was taking Vicodin, Tylenol, and Advil. AR 262. On June 17, 2006, when Plaintiff was treated in the emergency room of St. Agnes for fecal impaction, the treating physician directed Plaintiff to "reduce Vicodin use," to which the doctor attributed Plaintiff's chronic constipation. AR 202-04. On July 5, 2006, Plaintiff's physician noted that Plaintiff had been taking Vicodin too long and needed to be referred to pain management specialists to get him off Vicodin. AR 261.

At his appointment on August 29, 2006, Plaintiff complained that the shooting pain from his right buttock into his right leg was only relieved by MS Contin, and explained that, since MS Contin[4] alone caused constipation and diarrhea, he was requesting a prescription for Vicodin. AR 258. The doctor noted that Plaintiff complained that ibuprofen did not relieve his pain. AR 258. On September 11, 2006, Plaintiff's physician at Adventist Health noted that he discussed with Plaintiff his addiction to Vicodin. The physician directed Plaintiff to first try ibuprofen and to use Vicodin only if the pain was not responding to ibuprofen. AR 257. In a progress note

---

[4] MS Contin (oral morphine) is an opiate (narcotic) pain killer used to relieve moderate to severe pain that occurs round the clock for longer than a few days. www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000590 (April 4, 2011).

8

dated December 20, 2006, Plaintiff's treating physician at Adventist Health twice noted that Plaintiff's purpose in coming in that day was his desire to get disability. AR 236.

Although Adventist Health provided a diabetes management program, Plaintiff repeatedly failed to consistently monitor blood glucose, take his medication, and address problems such as foot ulcers. *See* AR 281, 511  On March 30, 2007, Dan White, F.H.P., recommended an end to diabetes education services, noting Plaintiff's persistent failure to comply with his medication and diet regime, and his lack of cooperation. AR 280. On April 27, 2007, Plaintiff again saw a physician at Adventist Heath Care and complained of leg pain. AR 277. Although the clinic had previously prescribed Neurontin[5] for the pain, Plaintiff had not taken it. AR 277. At the agency hearing, Plaintiff testified that, because physical therapy had not helped his leg problems following his car accident, he had taken Vicodin since that time. AR 27.

The ALJ's finding that Plaintiff lacked credibility was supported by substantial evidence.

### D.      Deficiencies in Hypothetical Questions

Plaintiff contends that this Court must reverse the Commissioner's denial of benefits because, in presenting his hypothetical questions at step five, the ALJ directed the vocational expert to assume a person who could not lift above shoulder level, not ***at or above*** shoulder level. Arguing that, for practical purposes, lifting at shoulder level is no different than lifting above shoulder level, the Commissioner responds that the ALJ's error, if any was harmless. This Court agrees with the Commissioner.

If a social security claimant shows that he cannot return to his previous work, the burden of proof shifts to the Commissioner to establish that the claimant can do other work. *Embrey v. Bowan*, 849 F.2d 418, 422 (9th Cir. 1988). The Commissioner can meet that burden through a vocational expert's testimony, obtained through the use of hypothetical questions. *Id.* The hypothetical questions must set forth all of the claimant's limitations and restrictions. *Id. See, e.g., Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 578 (9th Cir. 1988) (Pregerson, J., concurring) ("The ALJ's depiction of the claimant's disability must be accurate,

---

[5] Neurontin (gabapentin) is an anticonvulsant drug used to control seizures and pain resulting from shingles. . www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000940 (April 4, 2011).

9

detailed, and supported by the medical record"); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984) (rejecting hypothetical questions that failed to include the claimant's pain as a limitation of his exertional abilities). In *Embrey*, the court rejected the ALJ's hypothetical question as being both contrary to the record and as omitting relevant details of Embrey's disability. 849 F.2d at 422-23. First, nothing in the record supported the ALJ's assumption that Embrey could alternate between sitting and standing for an eight-hour work day; in fact, the testimony of Embrey and his treating physician specifically contradicted it. *Id.* at 423. In addition, the hypothetical questions omitted Embrey's need for periodic rest, back and chest pain, and dizziness and blurred vision caused by his diabetes. Plaintiff's contention regarding the ALJ's characterization of the limited movement of Plaintiff's right shoulder is not the same as the assumptions in *Embrey* that were contradicted by the evidence.

In cases in which additional detail could have been included in a hypothetical question, the question is acceptable so long as it properly identifies the claimant's impairments and provides sufficient detail to permit a vocational expert to understand the claimant's limitations. *Temple v. Callahan*, 114 F.3d 1195, 1997 WL 289457 at *5 (9th Cir. May 29, 1997) (No. 96-55024). *See, e.g., Osenbrock v. Apfel*, 240 F.3d 1157, 1164 (9th Cir. 2001) (holding that the ALJ did not err in omitting limitations relating to side effects of the claimant's medication in the absence of evidence establishing that the side effects were severe enough to interfere with the claimant's ability to work); *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) (holding that the ALJ's error in omitting some of the claimant's limitations was irrelevant in light of other reliable evidence, including the claimant's own testimony and medical evidence undermining the claimant's credibility).

The ALJ's wording of Plaintiff's shoulder limitations was similarly irrelevant here. Not only did Plaintiff's attorney, who actively questioned Najarian, fail to object to the ALJ's hypothetical questions, she incorporated the first hypothetical question into her own hypothetical questions. None of the four occupational titles that Najarian identified as available and suitable for Plaintiff distinguish between lifting at shoulder level and lifting above shoulder level. In

///

addition, Najarian testified that she had eliminated all job subcategories that required lifting above shoulder level.   The ALJ's error, if any, was harmless.

### III.     Conclusion and Order

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.  The Clerk of Court is DIRECTED to enter judgment in favor of the Commissioner and against Plaintiff.

IT IS SO ORDERED.

**Dated:     April 8, 2011**                                  /s/ Sandra M. Snyder
                                                              UNITED STATES MAGISTRATE JUDGE